```
              UNITED STATES DISTRICT COURT
               MIDDLE DISTRICT OF FLORIDA
                  FORT MYERS DIVISION


JAMES BYROM and MISSION UNITY INC.,
a    Florida    not-for-profit
corporation,

                  Plaintiff,

vs.                                Case No.  2:04-cv-365-FtM-29DNF

CHARLOTTE    COUNTY,   FLORIDA,   a
political subdivision of the State
of Florida,

                  Defendant.
_____/
```

**OPINION AND ORDER**

This matter comes before the Court on Defendant's Motion for Summary Judgment (Doc. #56), filed on July 5, 2005. Defendant Charlotte County (defendant or the County) filed its Statement of Undisputed Fact (Doc. #66) on August 5, 2005. Plaintiffs filed their memorandum of law in opposition (Doc. #63) and Statement of Material Facts in Dispute (Doc. #64) on August 4, 2004. Both parties also submitted other documents in support of their positions. (Doc. #56, Exs. 1-4; Doc #63, Ex. 1; Doc. #64, Exs. 1-17). Defendant filed a Motion to Strike Declarations attached to Plaintiffs' Response (Doc. #68) on August 10, 2004. Plaintiff filed its Opposition (Doc. #80) on August 30, 2005.

Plaintiffs provide clean and sober transitional housing in Charlotte County to recovering substance abusers. Their Complaint (Doc. #1) sets forth claims for violation of the federal Fair Housing Act (FHA), the Americans With Disabilities Act (ADA), the Rehabilitation Act of 1973 (RA), and the Civil Rights Act, 42 U.S.C. § 1983 (§ 1983). As to the FHA, ADA, and RA claims, defendant seeks summary judgment on the grounds that neither plaintiff has standing; the claims are both not ripe for adjudication and are moot; there is no evidence of intentional discrimination or disparate impact; there is no evidence that defendant refused a reasonable accommodation; and plaintiffs have shown no damages. As to the § 1983 claim, defendant argues that there is no evidence that plaintiffs were treated less well than other groups or were the victims of intentional discrimination. As to the RA claim, defendant asserts that because plaintiffs have no case under the FHA or the ADA, the RA claim fails.

**I.**

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if there is sufficient evidence such that a reasonable jury could return a verdict for either party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if it may affect the outcome of the suit under governing law. Id. The moving party

bears the burden of identifying those portions of the pleadings, depositions, answers to interrogatories, admissions, and/or affidavits which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259-60 (11th Cir. 2004).

To avoid the entry of summary judgment, a party faced with a properly supported summary judgment motion must come forward with extrinsic evidence, i.e., affidavits, depositions, answers to interrogatories, and/or admissions, which are sufficient to establish the existence of the essential elements to that party's case, and the elements on which that party will bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322; Hilburn v. Murata Elecs. N. Am., Inc., 181 F.3d 1220, 1225 (11th Cir. 1999). In ruling on a motion for summary judgment, if there is a conflict in the evidence, the non-moving party's evidence is to be believed and all reasonable inferences must be drawn in favor of the non-moving party. Shotz v. City of Plantation, Fla., 344 F.3d 1161, 1164 (11th Cir. 2003).

## II.

Mission Unity, Inc. ("Mission Unity") is a Florida not-for-profit corporation whose purpose is to provide clean and sober housing to recovering substance abusers. It is the only such provider in Charlotte County, Florida. James Byrom ("Byrom") is it's executive director and the owner of one of the houses which is

the subject of this litigation. The parties have summarized the undisputed facts in the "Joint Statement of Undisputed Facts" contained in their Joint Pretrial Statement (Doc. #74-1 pp. 3-8), which the Court will adopt. The summary judgment facts (the undisputed facts coupled with the material disputed facts when viewed from plaintiffs' perspective) can be summarized as follows:

Mission Unity typically rents houses and then operates them as group homes for unrelated persons in recovery from alcohol or drug addictions. Residents at a Mission Unity group home pay rent and must comply with certain rules, including being employed, seeking employment, or participating in volunteer or community service work; maintaining continued sobriety; and not using alcohol or drugs. For various reasons, many of the residents cannot drive, and therefore Mission Unity views it as essential that its residences be within walking distance of job pools and counseling meetings.

The Charlotte County Zoning Code divides the county into zoning districts, allows certain principal uses within each zoning district, and allows certain other uses within the zoning district as "special exceptions" upon the granting of an application. Charlotte County erroneously classified Mission Unity's group homes as "detoxification centers" as defined by its zoning code, and advised plaintiffs that the only zone in Charlotte County in which Mission Unity could operate its group home was in an OMI zone, and then only if an application for special exception was granted.

Byrom told the County that Mission Unity did not provide detoxification or treatment, but the County nonetheless took the position that only an OMI zone was appropriate. The County did not allow groups of unrelated recovering alcoholics or addicts to reside together in a single family zone even by special exception. The County did allow groups of unrelated disabled persons, such as adult congregate care facilities and group homes, to reside in a single family zone if the facilities obtain a special exception from the County.

In September, 2001, Mission Unity rented a single family dwelling at 22377 Midway to provide housing to recovering alcoholics and addicts. This house was in a single family zone, and was within walking distance of job pools and counseling meetings. Mission Unity did not seek any approval from the County before renting the house for its group home activities. In November, 2001, after receiving complaints from neighbors, the County issued a notice of zoning violation to Mission Unity stating that Mission Unity's use was not permitted in a single family zone.

Mission Unity then located and moved into a dwelling at 3505 Depew Circle, located in an OMI zone but not within walking distance to labor pools or counseling meetings. Mission Unity rented this house, and applied for and was granted a special exception to use it as a group home for recovering alcoholics and addicts.

In January, 2003, Mission Unity left 3505 Depew Circle for reasons unrelated to the County and moved to 21155 Gephardt Avenue. This was located in a single family zone, was within walking distance of job pools and counseling meetings, and was rented from Gwendolyn Johnson. In April, 2003, Mission Unity was notified that its group home violated the County zoning code. In May, 2003, the residence was inspected by the County and determined to be a prohibited use. The County issued a notice of violation to Ms. Johnson as the owner and Mr. Byrom as the operator, directing that Mission Unity residents be immediately removed from the premises and that the residence cease operating as a transitional house in a residential area. Ms. Johnson then sold the residence to Mr. Byrom for $85,000. Byrom and Mission Unity challenged the violation notice, but in January, 2004, the Code Enforcement Board upheld the violation of the zoning code, issued a cease and desist order, and provided one day for compliance before daily fines would begin. In February, 2004, counsel for Mission Unity sent a letter to the County requesting a reasonable accommodation under the federal Fair Housing Act to allow 21155 Gephardt Avenue to be used as a residence for recovering substance abusers in the single family zone. On February 18, 2004, the County granted this requested accommodation.

Meanwhile, in February, 2003, Mission Unity met with County officials concerning its plans to use a state housing grant to construct a four-bedroom group home for recovering substances

abusers. Mission Unity was told that because such a facility was a detoxification center it could only be constructed in an OMI zone, and then only by special exception. Mission Unity located property at 1444 Spear Street on which to construct its group home. This was located in an OMI zone, but not within walking distance to job pools or counseling meetings. Mission Unity applied for a special exception and received a positive staff recommendation from the County, but after intense community opposition was denied a special exception by the Zoning Board after a public hearing.

Mission Unity then located two lots at 1958 Redmond Street on which to construct its group home. While in an OMI zone, these lots were not within walking distance to job pools or counseling meetings. Mission Unity applied for a special exception. In May, 2003, the special exception was granted, conditioned upon provision of commercial grade fencing, certain landscaping, the exclusion of female residents, and residency at the house by Byrom. This house was built and is operational.

### III. Case or Controversy

The County raises three issues founded in the Article III requirement that a federal court has jurisdiction only if there is a case or controversy. U.S. Const., art III, § 2, cl. 1. The County argues that neither plaintiff has standing, that the case is not ripe for adjudication, and that the case is now moot.

**A.  Standing:**

The pertinent standing principles are well settled. "The party who invokes federal jurisdiction must establish that it has standing to assert its claim." Nat'l Alliance for the Mentally Ill, St. Johns Inc. V. Bd of County Comm'rs of St. Johns County, 376 F.3d 1292, 1294 (11th Cir. 2004). In order to establish standing, a plaintiff must prove three elements: (1) that he has suffered an "injury-in-fact;" (2) a causal connection between the asserted injury-in-fact and the challenged conduct of the defendant; and (3) that the injury likely will be redressed by a favorable decision. Shotz, 256 F.3d at 1081, citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). These requirements are the "irreducible minimum" required by the Constitution for a plaintiff to proceed in federal court. Vermont Agency of Natural Resources v. United States, 529 U.S. 765, 771 (2000); Northeastern Fla. Chapter, Associated Gen. Contractors of America v. City of Jacksonville, 508 U.S. 656, 664 (1993). Standing under the Fair Housing Act is as broad as the Constitution permits. Gladestone, Realtors v. Village of Bellwood, 441 U.S. 91, 109 (1979). "[A] fair housing organization has standing to recover certain types of damages on its own to the extent it suffers injury proximately caused by the defendant's unlawful conduct." Central Alabama Fair Housing Center, Inc. v Lowder Realty Co., Inc., 236 F.3d 629, 639 (11th Cir. 2001). See also Havens Realty Corp. v. Coleman, 455 U.S. 363 (1982).

-8-

The County argues that neither plaintiff is a party protected under the FHA, the ADA, or the RA, and therefore cannot have individual standing. (Doc. #56, p. 8)[1]. The Court disagrees. The Fair Housing Act allows "[a]n aggrieved person" to commence a civil action to obtain appropriate relief with respect to discriminatory housing practices. 42 U.S.C. § 3613(a)(1)(A). An "aggrieved person" includes any person who "(1) claims to have been injured by a discriminatory housing practice; or (2) believes that such person will be injured by a discriminatory housing practice that is about to occur." 42 U.S.C. § 3602(i). A "person" includes, among others, an individual, corporation or association. 42 U.S.C. § 3602(d). It is clear that both plaintiffs satisfy the statutory definition of an aggrieved person. Therefore, the Court rejects the argument that plaintiffs are not protected parties under the statute.

While each plaintiff falls within the statutory definitions, each must nonetheless establish the "irreducible minimum" for Article III standing. National Alliance for the Mentally Ill, St. Johns, Inc., 376 F.3d at 1294-96 (Upon proper factual showing, plaintiffs can have standing under FHA, ADA, and RA, but plaintiffs made insufficient factual showing). The County argues that neither

---

[1] While defendant argues that plaintiffs lack standing under the FHA, ADA, and RA, it only specifically addresses the FHA. Plaintiffs do likewise. (Doc. #63, pp. 5-7). The Court accepts the parties' implicit position that standing under the ADA and the RA is governed by the same principles as standing under the FHA.

plaintiff has any personal damages, or even damages to their clients, and therefore cannot establish standing. The County points out that plaintiffs' never lost any rental income, and they were never forced to pay any fine levied by the County. The County further argues that plaintiffs have not presented "a founded and particularized list of damages," and cannot claim litigation expenses because their attorney is providing services on a contingent fee basis. (Doc. #56, pp. 8-9).

"Victims of discrimination in violation of the FHA are entitled to 'actual damages.' . . . anger, embarrassment, and emotional distress are clearly compensable injuries under this standard." Banai v. Secretary, U.S. Dept. Of Housing and Urban Affairs, 102 F.3d 1203, 1207 (11th Cir. 1997). It is well established that a fair housing organization can have standing to sue under the Fair Housing Act. Havens Realty Corp. V. Coleman, 455 U.S. 363 (1982); Central Alabama Fair Housing Center, Inc., 236 F.3d at 639. Central Alabama adopted the rule of some other circuits that "the deflection of an organization's monetary and human resources from counseling or educational programs to legal efforts aimed at combating discrimination, such as monitoring and investigation, is itself sufficient to constitute an actual injury [where] traceable to some act of the defendant." 236 F.3d at 639. That is, Mission Unity need only show a deflection of resources from its usual activities of providing clean and sober housing to the pursuit of legal efforts against the alleged discrimination by

the County.  The extent of such damages, if any, is for a jury to decide.  <u>Id</u>. at 643.  <u>See also</u> <u>National Alliance for the Mentally Ill, St. Johns, Inc.</u>, 376 F.3d at, 1295-96 (advocacy's group's loss of resources can be sufficient to establish injury in fact, but nothing in record showed actual loss of resources).

The record in this case is sufficient to support Mission Unity's claim for damages because of housing discrimination by the County.  Specifically, Byrom spent time attending board meetings and seeking other accommodations for Mission Unity's residents. Byrom also spent time and financial resources assembling informational packets about the FHA and the population Mission Unity serves.  This expenditure of time and monetary resources was a diversion of assets from Mission Unity's *raison d'etre*: providing clean and sober housing.  Therefore, Mission Unity has established Article III standing.

Plaintiffs have not established Byrom has standing simply by virtue of his status as executive director of Mission Unity. Plaintiffs have cited no case which establishes that an employee of a fair housing organization has individual standing to sue. Byrom, however, became the owner of 21155 Gephardt Avenue and thereafter was personally involved in the challenge to the violation notice involving his house.  Byrom was the named respondent in the Code Enforcement Board proceedings, and was ordered by the County to reside at 1958 Redmond as a condition of approval of the special exception application.  This is sufficient to establish an injury

in fact for Byrom in his individual capacity. The extent of such damages, if any, is for a jury to decide. Byrom has established Article III standing as to the activities involving 21155 Gephardt Avenue and 1958 Redmond.

**B. Ripeness:**

Defendant argues that "[b]ecause there has been no damage at this point (and will not be in the future), this matter is not ripe for adjudication." (Doc. #56, p. 10). The Court disagrees.

"While standing is concerned with who is a proper party to litigate a particular matter, ripeness and mootness determine when that litigation may occur. Specifically, the ripeness doctrine seeks to separate matters that are premature for review because the injury is speculative and never may occur, from those cases that are appropriate for federal court action." Alabama Power Co. V. United States Dep't of Energy, 307 F.3d 1300, 1310, n.9 (11th Cir. 2002) (citation omitted). To determine whether a claim is ripe, the court makes "a two part determination of (1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration." National Advertising Co. v. City of Miami, 402 F.3d 1335, 1339 (11th Cir. 2005)(citation and quotation omitted). "When a plaintiff is challenging a governmental act, the issues are ripe for judicial review if a plaintiff shows he has sustained, or is in immediate danger of

sustaining, a direct injury as the result of that act." <u>National Advertising Co</u>. 402 F.3d at 1339 (citation and quotation omitted).

The Court finds that this case is ripe. As discussed above, there is sufficient Article III injury; the claims are sufficiently mature and the issues are sufficiently defined and concrete to permit effective decision-making by the court. Plaintiffs have shown, at least for summary judgment purposes, that they have sustained a direct injury as the result of the County's conduct, and it will create a hardship if the Court were to withhold consideration of the issues in this case.

**C. Mootness:**

The County argues that the case is now moot because "everything County was asked to do for plaintiffs has been done, and an ordinance specifically allowing sober houses in residential district is being written . . ." (Doc. #56, p. 10). The Court disagrees.

Voluntary cessation of allegedly illegal conduct does not render a case moot unless defendant demonstrates that there is no reasonable expectation that the alleged violation will recur and interim relief or events have completely and irrevocably eradicated the effects of the alleged violation. <u>Seay Outdoor Advertising, Inc. v. City of Mary Esther, Florida</u>, 397 F.3d 943, 946-47 (11th Cir. 2005). While the County's proposed revision of its code specifically includes language of compliance with the FHA (Doc. #56-5, p. 2), the County has not submitted any evidence that this

ordinance has been enacted and is currently in effect. A proposed remedy is not sufficient to demonstrate that the alleged violation cannot recur. Even if the County has ceased its violation of the federal statutes and had passed the ordinance, plaintiffs seek damages for past violations and this is sufficient to preclude mootness. City of Edmonds v. Oxford House, 514 U.S. 725, 731 n. 3 (1995); Havens, 455 U.S. at 371. The Court finds the case is not moot.

### III.

Defendant argues that plaintiffs have failed to present evidence of intentional discrimination, discriminatory effect, or a failure to reasonably accommodate, and have failed to establish a violation of any of the federal statutes. The Court disagrees.

A reasonable jury, viewing the evidence in the light most favorable to plaintiffs, could well find for plaintiffs on the issue of discrimination under all the statutes. A reasonable jury could find that the County intentionally misapplied the detoxification provision of its ordinances to plaintiffs when such classification was clearly erroneous and occurred despite the protests of Byrom; that the County required plaintiffs to move their houses on multiple occasions, and to seek housing in OMI zones only, when such was not required by any existing County ordinance and was motivated by the status of the residents as recovering alcoholic and addicts; that other groups were not given the same treatment as was Mission Unity; that requests for special

exceptions were denied without good cause and thus resulted in the denial of requested reasonable accommodations; and that the County gave in to public opposition instead of performing its duty by following a variety of federal laws.

**IV.**

The County argues that plaintiffs have offered no proof of a Section 1983 violation (Doc. #56-2, p. 19) and that "[a]n equal protection claim requires that plaintiffs were treated differently." (Id). Taking the Summary Judgment record as a whole, plaintiffs have presented sufficient evidence of disparate treatment. For instance, the County did allow groups of unrelated disabled persons, such as adult congregate care facilities and group homes, to reside in a single family zone if the facilities obtain a special exception from the County, but did not allow Mission Unity to locate its sober houses in single family zones. While addicts are not a suspect classification (City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 442-446 (1985), there are sufficient material facts for a reasonable jury to find disparate treatment of substantially similar groups.

**V.**

Defendant's Motion to Strike Declarations (Doc. #68) is moot because the Court has not utilized either of the two affidavits in resolving the summary judgment motion.

Accordingly, it is now

**ORDERED:**

1. Defendant's Motion for Summary Judgment (Doc. #56) is **DENIED**.

2. Defendant's Motion to Strike Declarations attached to Plaintiffs' Response (Doc. #68) is **DENIED** as moot.

**DONE AND ORDERED** at Fort Myers, Florida, this __12th__ day of September, 2005.

_____
JOHN E. STEELE
United States District Judge

Copies:
Counsel of record